IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDY L. SANCHEZ,

      **Plaintiff,**

vs.                                                     No. CIV 02-1469 LCS

**JO ANNE BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand (Doc. 10), filed June 6, 2003. The Commissioner of Social Security issued a final decision denying Plaintiff's application for supplemental security income. This matter comes before this Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is not well-taken and should be **DENIED**.

### I. STANDARD OF REVIEW

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence that a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record. *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

**II. PROCEDURAL HISTORY**

Plaintiff, now 53 years old, filed his application for disability insurance benefits on October 26, 2000, alleging disability commencing on August 16, 2000. (R. at 84-87.) Plaintiff's alleged disability was due to back problems and post-traumatic stress disorder ("PTSD"). (R. at 128.) Plaintiff has a high school education and past relevant work in the construction industry. (R. at 133.)

overwhelmed by other evidence on the record. *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

**II. PROCEDURAL HISTORY**

Plaintiff, now 53 years old, filed his application for disability insurance benefits on October 26, 2000, alleging disability commencing on August 16, 2000. (R. at 84-87.) Plaintiff's alleged disability was due to back problems and post-traumatic stress disorder ("PTSD"). (R. at 128.) Plaintiff has a high school education and past relevant work in the construction industry. (R. at 133.)

Plaintiff's application for disability insurance benefits was denied at the initial level on January 4, 2001 (R. at 61.) and at the reconsideration level on August 21, 2001. (R. at 62.) Plaintiff appealed the denial of his application by filing a request for Hearing by Administrative Law Judge. (R. at 8.) On January 3, 2002, attorneys Gary J. Martone and A. Michelle Baca were retained to represent Plaintiff. (R. at 24-25.) The ALJ held a hearing on March 19, 2002, at which Plaintiff was represented by Mr. Martone. (R. at 30.) Plaintiff and Ella Bowman, a vocational expert, testified at the hearing. (Id.)

At the March 19, 2002 hearing, Plaintiff testified that he was currently unemployed and living with his wife and three children. (R. at 35.) Plaintiff's wife is employed. (Id.) Plaintiff stated that he wakes up several times per night due to muscle spasms in his back. (R. at 36.) He further stated that he takes muscle relaxants which cause him to become drowsy and that he needs to take naps during the day. (Id.) Plaintiff is an alcoholic and is participating in AA. (R. at 37.) He stated he has been sober since November of 2001. (Id.)

Under questioning by the ALJ, Plaintiff indicated that he participates in numerous activities with his family, although these activities do not require a great deal of exertion. (R. at 39-41.) Plaintiff stated that he injured his back while working in construction. (R. at 42.) Plaintiff was able to briefly continue this work because he was allowed to lay down for brief periods during the workday. (R. at 43.) Eventually these rest breaks did not help because his legs would begin to go numb. (Id.)

Plaintiff stated that his doctors recommended surgery to fuse portions of his spine but that he did not want to pursue that option at this time. (R. at 44.) He indicated he was taking muscle relaxants and ibuprofen for pain. Plaintiff also mentioned that he was taking medications for

heartburn and depression. (Id.) The depression has apparently been episodic, beginning upon Plaintiff's return from Vietnam. (R. at 47.) Plaintiff stated he has been diagnosed with post-traumatic stress disorder, as well as hearing loss, also resulting from his time in Vietnam. (R. at 47-48.) He indicated that he is needs to change positions constantly due to back pain. (R. at 49-50.)

During the hearing, the ALJ also questioned Ella Bowman, a vocational expert ("VE"). Ms. Bowman opined that Plaintiff was unable to perform any of his past relevant work. (R. at 55.) She further stated that Plaintiff possessed some transferable skills and was able to name a job that an individual with Plaintiff's limitations and transferable skills could perform. (R. at 54.) Ms. Bowman also listed several unskilled jobs that Plaintiff could perform. (R. at 56.) Plaintiff's need for naps and his need to change positions constantly was of concern to Ms. Bowman, as she thought this would significantly limit the number of jobs he could perform. (R. at 57.) She stated that his hearing difficulties would not pose a significant problem in the workplace. (Id.)

The ALJ issued his decision on July 17, 2002, (R. at 9.), analyzing Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). At the first step of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. (R. at 21.) At the second step, the ALJ determined that Plaintiff had a severe impairment due to degenerative disc disease of the lumbar spine. (Id.) The ALJ found that Plaintiff's impairments due to alcohol dependance, depression, post-traumatic stress disorder and hearing loss were not severe, either separately or in combination. (Id.) At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments or combination of

impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (Id.)  The ALJ also found that Plaintiff was not fully credible with regard to statements concerning the severity and limiting effects of his symptoms. (R. at 18-19.)  At step four, the ALJ found that Plaintiff, based on an assessment of Residual Functional Capacity ("RFC"), was unable to return to any relevant past work. (R. at 20.)  At step five, the ALJ concluded that based on his RFC, Plaintiff retained the ability to perform a significant range of light work as defined in 20 C.F.R. § 404.1567 (Id.)  The ALJ further concluded that Plaintiff was not, and had at no time been, disabled within the meaning of the Social Security Act. (R. at 22.)

Plaintiff filed a Request for Review of Hearing Decision on September 9, 2002, (R. at 8.) and his attorney submitted a brief to the Appeals Council. On October 18, 2002, the Appeals Council, after considering the contentions raised in the brief, denied Plaintiff's request for review. (R. at 5-6.)  Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On November 20, 2002, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### III. ANALYSIS AND FINDINGS

Plaintiff reports past relevant work in the construction industry and states he worked as a job foreman in concrete construction from 1985 until August, 2000. (R. at 107.)  Plaintiff sustained injuries to his back at work in August of 2000 and states he has been unable to work since that time. (R. at 42.)  It appears from the record that Plaintiff had been having difficulty with back pain for approximately one year prior to the August, 2000 accident. (R. at 42.)

On October 6, 2000, Plaintiff met with David Holton, M.D. for problems relating to back

pain and muscle weakness. An MRI was performed on August 4, 2000 after which Dr. Holten diagnosed Plaintiff with multilevel degenerative disc disease and lumbar spondylosis. (R. at 169.) While surgery was not recommended, Dr. Holten did inform the patient that an epidural block might be in order to relieve his discomfort. (Id.) Plaintiff was taking muscle relaxants and Naprosyn[1] at the time of his visit with Dr. Holten. (Id.)

X-Rays of Plaintiff's cervical and thoracic spine taken on November 18, 2000 revealed scoliotic curvature and scattered osteophytes in the thoracic spine. (R. at 175.) These studies also revealed a congenital fusion in the upper cervical spine with no neural foraminal impingement. (R. at 176.) Plaintiff's spine otherwise appeared normal. (Id.)

Plaintiff received an epidural steroid injection on November 16, 2000. The purpose of this treatment was to resolve the intermittent numbness in Plaintiff's left lower extremity. (R. at 168.) On November 20, 2000, an EMG/NCV study was performed to evaluate the level of nerve function in Plaintiff's lower extremities. The study displayed equivocal evidence of abnormal function in the left peroneal nerves. (R. at 165.) It was noted however that a root problem from a disc would not normally cause this type of abnormal function. (Id.) The study showed no evidence of radiculopathy or any clear evidence of neuropathy. The findings indicated against any nerve damage having been caused in the time frame of Plaintiff's work-related injury. (R. at 166.)

A residual functional capacity evaluation was performed on December 29, 2000. (R. at 138-145.) It was established that Plaintiff could occasionally lift 50 pounds and frequently lift 25

---

[1]Naprosyn is indicated for the treatment of rheumatoid arthritis, osteoarthritis, ankylosing spondylitis and juvenile arthritis. Potential adverse reactions may include dizziness, headache, drowsiness and lightheadedness as well as tinnitus, hearing disturbances and visual disturbances. *Physician's Desk Reference*, 2632-2633, (54th ed. 2000).

pounds. Plaintiff could sit, stand or walk for a total of 6 hours in an eight-hour workday. Plaintiff's ability to push and/or pull was unlimited. (R. at 139.) It was observed that Plaintiff should refrain from very heavy work. (R. at 140.) No manipulative, visual or communicative limitations were established. (R. at 141-142.) Plaintiff was advised to avoid prolonged exposure to extreme cold. (R. at 142.)

A second residual functional capacity assessment performed on August 17, 2001 revealed similar findings with some minor differences. (R. at 146-153.) Plaintiff was found to have postural limitations that prevented climbing ladders or scaffolds and which allowed him to balance or crawl only occasionally. (R. at 148.) No environmental, visual, manipulative or communicative limitations were established, although it was noted that Plaintiff appeared to have some high frequency hearing loss. (R. at 149-150.)

Plaintiff was seen on March 7, 2001 by Pamela Black, M.D., again for back pain. (R. at 195.) Dr. Black noted that Plaintiff had osteoarthritic changes in the lumbar spine with disc bulges apparent from the MRI. He was noted to have some radicular features consistent with irritation of the L4-5 nerve root. (R. at 197.) The patient was found to have reached maximum medical improvement, but it was noted that the Plaintiff could return to work with certain restrictions. (R. at 198.)

Plaintiff underwent a caudal epidural injection on March 14, 2001. (R. at 193.) He reported an excellent response with minimal pain since the time of treatment. (R. at 191.) Plaintiff received a second epidural injection on March 28, 2001. (R. at 188.) He reported no improvement with this injection. (R. at 186.) It was observed that physical therapy may have caused aggravation of Plaintiff's existing injury. (Id.) Dr. Black recommended use of a lumbar

brace and further rehabilitation exercises. (R. at 187.) She further noted that Plaintiff could return to work and that there were no changes in his impairment rating. (Id.)

Plaintiff underwent an audiological evaluation on May 15, 2001. Plaintiff complained of hearing loss, tinnitus and communication difficulties. Hearing loss and tinnitus were found to be consistent with cochlear damage caused by noise exposure during military service and afterwards. Amplification was found to be warranted and a reevaluation was recommended every one to two years to monitor continued loss. (R. at 201.)

Plaintiff also presented at the Veteran's Administration for a psychiatric evaluation related to post-traumatic stress disorder ("PTSD") on August 8, 2001. (R. at 255.) Plaintiff admitted to episodes of severe depression in the past but denied suicidal or homicidal ideations. (R. at 256.) Thomas Vosburgh, M.D., staff psychiatrist, diagnosed Plaintiff with a single episode of Major Depressive Disorder, alcohol dependance and chronic PTSD with mild to moderate symptoms, with recent exacerbation. (R. at 258.) Dr. Vosburgh rated Plaintiff's Global Assessment of Functioning ("GAF") score at 60 with a GAF of 65 for the previous year.[2] A GAF of 60 indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). At GAF of 65 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well and has some

---

[2]The GAF scale is used to assess an individual's overall level of functioning. This information is useful in planning treatment, measuring its impact and in predicting outcome. The GAF scale is divided into 10 ranges of functioning. Determining a GAF rating involves making a subjective choice of a single value that best reflects the individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) [DSM-IV].

meaningful interpersonal relationships.  Dr. Vosburgh noted that entry into a PTSD program should be considered if Plaintiff's symptoms did not improve following treatment for alcohol dependance and depression.  (Id.)  Plaintiff was noted to be cooperative and goal-oriented with high motivation and readiness to learn.  (Id.)

### IV.  DISCUSSION

In his Motion to Reverse and Remand for Rehearing (Doc. 10), Plaintiff argues that the ALJ's decision that his hearing loss and mental impairments did not constitute severe impairments was not supported by substantial evidence.  Plaintiff also contends that the ALJ's decision regarding disability was based on an improper hypothetical question addressed to the vocational expert.

Plaintiff first contends that the ALJ erred at step two of the sequential evaluation when he determined that Plaintiff's mental and hearing impairments were not severe, considered separately or in combination.  (R. at 21.)  The severity regulation at step two requires the claimant to show that he has an impairment or combination of impairments which significantly limits the abilities and aptitudes necessary to do most jobs.  *Bowen v. Yuckert*, 482 U.S. 137, 146; 20 C.F.R. §§ 404.1520(c), 404.1521(b) (1986).  Further, the Secretary has the express statutory authority to place the burden of showing a medically determinable impairment on the claimant.  *Id.*  If the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in substantial gainful activity.  *Id.*  While step two requires only *de minimis* proof of impairment, the claimant must show more than the mere presence of a condition or ailment.  *Hinkle v. Apfel*, 123 F.2d 1349, 1352 (10th Cir. 1997).  A step two analysis is governed by medical factors alone.  *Williams*

9

*v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

Plaintiff first argues that the ALJ's finding that his mental impairment was nonsevere was not supported by substantial evidence. (Doc. 11.)  This contention must fail.  The ALJ considered the evidence contained in the record regarding Plaintiff's mental impairments, as required under *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)(R. at 16.) Although Plaintiff was diagnosed with post-traumatic stress disorder and depression, the record does not contain any clinical or diagnostic testing results which suggest Plaintiff's work-related activities were significantly affected by his mental impairments.  (R. at 235-256.)  Furthermore, Plaintiff's treating physicians did not alter their assessments of his ability to perform work-related activities during the relevant period.  (R. at 138-153, 186-188.)  Therefore, the ALJ's determination regarding Plaintiff's mental impairments was supported by substantial evidence and must be upheld.

Plaintiff also argues that the ALJ erred in finding his hearing impairment to be nonsevere. (Doc. 11.)  This contention must fail for the reasons outlined above.  First, it is clear that the ALJ considered the evidence in the record regarding the Plaintiff's hearing impairments.  *See Drapeau*, 255 F.3d at 1213.  (R. at 15-16.)  An audiological evaluation performed on May 15, 2001 revealed moderate to moderately severe sensorineural loss in both ears.  (R. at 201.)  Although amplification was found to be warranted at that time, Plaintiff stated at the hearing that a hearing aide had not been recommended.  (R. at 47.)  Additionally, a second residual functional capacity assessment, performed on August 17, 2001, revealed that, while Plaintiff did have some high frequency hearing loss, he was capable of performing work allowing for some postural limitations and lifting restrictions.  (R. at 148-150.)  The ALJ's determination regarding Plaintiff's hearing

limitations were therefore also supported by substantial evidence and should be upheld.

Further, the ALJ found that Plaintiff was not credible regarding his various limitations. (R. at 18.)  It is well established that subjective testimony alone that the claimant has symptoms cannot establish a finding of disability.  *Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir. 1988). By statute, objective medical evidence must establish an impairment and statements regarding the intensity and persistence of symptoms must be consistent with the medical findings and signs.  42 U.S.C. § 423(d)(5)(A) (Supp. 1988).  Credibility determinations are particularly the province of the finder of fact and the Tenth Circuit has declined to upset such determinations when supported by substantial evidence.  *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990).

Plaintiff next argues that the ALJ's hypothetical question to the vocational expert was not supported by substantial evidence.  This contention must also be rejected.  Specifically, the ALJ questioned the VE about Plaintiff's limitations, not including limitations relating to alleged mental impairments.  (R. at 54-57.)  The hypothetical provided to the ALJ by Plaintiff's attorney contained assumptions which the ALJ did not find to be supported by the record.  (R. at 57-58.) It is well established that hypothetical questions posed to a vocational expert must reflect with precision all of a claimant's impairments, but these questions need only reflect impairments borne out by the evidentiary record.  *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995).  The ALJ adequately explained his refusal to credit Plaintiff's complaints regarding the severity of his mental impairments.  (R. at 16, 18.) *See Shepherd v. Apfel*, 184 F.3d 1196 (10th Cir. 1999).  As such, the ALJ's hypothetical questions were supported by substantial evidence and the decision of the Commissioner should be upheld.

## IV.  CONCLUSION

Upon review of the evidence presented on this Motion to Reverse and Remand for Rehearing, this Court has determined that the Commissioner's decision was supported by substantial evidence and that the ALJ adequately developed the record.  Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing is **DENIED**.

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE**.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**